Iskalo Elec. Tower LLC v Stantec Consulting Servs., Inc. (2019 NY Slip Op 05867)





Iskalo Elec. Tower LLC v Stantec Consulting Servs., Inc.


2019 NY Slip Op 05867


Decided on July 31, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 31, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, CARNI, LINDLEY, AND TROUTMAN, JJ.


394 CA 18-01771

[*1]ISKALO ELECTRIC TOWER LLC AND DOWNTOWN CBD INVESTORS LLC, PLAINTIFFS-APPELLANTS,
v
STANTEC CONSULTING SERVICES, INC., DEFENDANT-RESPONDENT. 






THE GARAS LAW FIRM, LLP, WILLIAMSVILLE (JOHN C. GARAS OF COUNSEL), FOR PLAINTIFFS-APPELLANTS.
HARTER SECREST & EMERY LLP, ROCHESTER (F. PAUL GREENE OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from an order and judgment (one paper) of the Supreme Court, Erie County (Donna M. Siwek, J.), entered March 21, 2018. The order and judgment, among other things, denied in part plaintiffs' motion for summary judgment and granted in part defendant's motion for partial summary judgment. 
It is hereby ORDERED that the order and judgment so appealed from is unanimously modified on the law by denying those parts of defendant's motion with respect to the tenth affirmative defense/seventh counterclaim insofar as it sought an offset for rent that plaintiff Iskalo Electric Tower LLC failed to collect from nonparty Iskalo 65 LB LLC (uncollected rent) and with respect to the eleventh affirmative defense/eighth counterclaim and the twelfth affirmative defense/ninth counterclaim, and granting plaintiffs' motion with respect to those affirmative defenses/counterclaims to that extent and dismissing the tenth affirmative defense/seventh counterclaim insofar as it sought an offset for uncollected rent and the eleventh affirmative defense/eighth counterclaim and twelfth affirmative defense/ninth counterclaim in their entirety, and as modified the order and judgment is affirmed without costs.
Memorandum: In this action to, inter alia, recover damages for defendant's breach of a commercial lease with plaintiff Iskalo Electric Tower LLC (IET), plaintiffs appeal, as limited by their brief, from an order and judgment insofar as it granted those parts of defendant's motion for partial summary judgment on defendant's "tenth affirmative defense/seventh counterclaim," "eleventh affirmative defense/eighth counterclaim," and "twelfth affirmative defense/ninth counterclaim" and denied those parts of plaintiffs' motion for summary judgment seeking dismissal of the same.
In 2005, IET and defendant entered into a commercial lease whereby IET would lease office space to defendant in plaintiffs' Electric Tower building (Electric Tower lease). For reasons not at issue on this appeal, defendant terminated the Electric Tower lease and vacated the premises. Supreme Court subsequently determined that defendant's termination was a breach of the Electric Tower lease.
During that time, IET had an outstanding loan that was secured by the Electric Tower lease. After defendant vacated the premises, the lender required that IET provide additional security. In order to satisfy that requirement, IET entered into an agreement, entitled "lease agreement," with nonparty Iskalo 65 LB LLC (65 LB) for the same premises formerly leased to defendant under the Electric Tower lease. The lease between IET and 65 LB (65 LB agreement) contained substantially similar terms to those contained in the Electric Tower lease, provided for the payment of rent, and contained numerous provisions that were consistent with the creation of a landlord/tenant relationship between IET and 65 LB. Nevertheless, 65 LB, which was solely [*2]owned by the same person who was the sole owner of IET, never physically possessed the premises described in the 65 LB agreement, and it appears that the 65 LB agreement was created as additional security for IET's loan, rather than to secure commercial space for 65 LB. Although 65 LB paid some rent under the terms of the 65 LB agreement when required by IET's lender, IET did not collect rent from 65 LB for the majority of the term of the 65 LB agreement.
After plaintiffs commenced this action alleging, among other things, that defendant breached the Electric Tower lease, defendant answered, asserting numerous affirmative defenses, several of which were also labeled counterclaims. As relevant to this appeal, defendant's tenth affirmative defense/seventh counterclaim alleged that defendant's liability for its breach of the Electric Tower lease must be offset by the amount of rent IET collected from 65 LB and, because IET breached the lease by unreasonably failing to collect the full rent due from 65 LB, that defendant's liability must also be offset by the amount of rent that IET failed to collect under the 65 LB agreement. Defendant's eleventh affirmative defense/eighth counterclaim similarly alleged that IET breached the Electric Tower lease by failing to collect rent from 65 LB and to relet the premises. Defendant's twelfth affirmative defense/ninth counterclaim alleged that IET acted in bad faith and breached the covenant of good faith and fair dealing by failing to collect rent from 65 LB. As noted, the court granted defendant's motion and denied plaintiffs' motion with respect to each of those affirmative defenses/counterclaims.
Initially, we reject defendant's contention that plaintiffs' instant appeal is barred by plaintiffs' prior appeal from an order granting defendant leave to amend its answer, a prior appeal that we dismissed due to plaintiffs' failure to timely perfect it. Although a party's failure to timely perfect an appeal " acts as a bar to a subsequent appeal as to all questions that were presented on the earlier appeal' " (Chiappone v William Penn Life Ins. Co. of N.Y., 96 AD3d 1627, 1628 [4th Dept 2012], quoting Bray v Cox, 38 NY2d 350, 353 [1976]), the questions at issue on the appeal from the prior order granting leave to amend the answer pursuant to CPLR 3025 (b) are not the same as those at issue on this appeal from the order and judgment determining the parties' respective summary judgment motions pursuant to CPLR 3212.
Addressing the merits, we reject plaintiffs' contention that the 65 LB agreement was not an enforceable lease pursuant to which defendant would be entitled to an offset of its liability. The 65 LB agreement contains terms substantially similar to the Electric Tower lease and on its face creates and describes a landlord/tenant relationship between IET and 65 LB. Reading the 65 LB agreement according to its clear and complete terms (see Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004]), we conclude that it is an enforceable lease between IET and 65 LB. Contrary to plaintiffs' contention, the mere fact that the 65 LB agreement was also used as security for a loan does not render that agreement unenforceable. Indeed, the Electric Tower lease had been security for that same loan and was still, as plaintiffs do not dispute, an enforceable lease.
With respect to the affirmative defenses/counterclaims at issue, the facts are undisputed and the parties agree that section 28.2 of the Electric Tower lease controls. That section provides, in relevant part: "Should Landlord elect to reenter as provided in subsection (b), or should Landlord take possession pursuant to legal proceedings or pursuant to any notice provided by law, Landlord may, from time to time, without terminating this Lease, relet the Premises or any part of the Premises in Landlord's or Tenant's name, but for the account of Tenant, for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term) and on such conditions and upon such other terms (which may include concessions of free rent and alteration and repair of the Premises) as Landlord, in its reasonable discretion, may determine, and Landlord may collect and receive the rent. Landlord will in no way be responsible or liable for any failure to relet the Premises, or any part of the Premises, or for any failure to collect any rent due upon such reletting." Contrary to plaintiffs' contention, we conclude that IET reentered the premises by reletting the same office space described in the Electric Tower lease to 65 LB pursuant to the 65 LB agreement (see generally Holy Props. v Cole Prods., 87 NY2d 130, 134 [1995]), thus triggering section 28.2. Under that section, IET relet the premises "for the account of [defendant]," and thus defendant is entitled to an offset against any damages arising from its breach of the Electric Tower lease equal to the amount of rent actually collected by IET from 65 LB.
However, we agree with plaintiffs that, under section 28.2, IET is not responsible for any [*3]failure to collect rent from 65 LB. Although section 28.2 provides that IET is to use its "reasonable discretion," that pertains to IET's discretion to include "such term or terms" and "such conditions" in a new lease when reletting the premises; it does not refer to the collection of rent. Instead, section 28.2 states that "[IET] may collect and receive the rent" and explicitly provides that "[IET] will in no way be responsible or liable for any failure to . . . collect rent due upon such reletting" (emphasis added). Although defendant contends that we must apply a general contractual requirement of good faith to section 28.2, "[t]he implied covenant of good faith and fair dealing, upon which [defendant] relies, will not impose an obligation that would be inconsistent with the terms of the contract" (Adams v Washington Group, LLC, 42 AD3d 475, 476 [2d Dept 2007]; see HSBC Bank USA, N.A. v Prime, L.L.C., 125 AD3d 1307, 1308 [4th Dept 2015]; Marine Midland Bank v Yoruk, 242 AD2d 932, 933 [4th Dept 1997]).
Defendant's tenth affirmative defense/seventh counterclaim alleged both that defendant was entitled to an offset based on rent IET failed to collect from 65 LB, as well as the limited rent that IET actually collected. Because IET's reletting of the premises to 65 LB triggered section 28.2 under the Electric Tower lease, defendant is entitled to an offset equal to the rent collected, and thus the court properly granted defendant's motion and denied plaintiffs' motion with respect to the tenth affirmative defense/seventh counterclaim insofar as it sought an offset for rent actually collected from 65 LB. Because IET is not responsible for rent it failed to collect from 65 LB, however, the court erred in granting defendant's motion and denying plaintiffs' motion with respect to the tenth affirmative defense/seventh counterclaim insofar as it sought an offset for rent IET failed to collect from 65 LB, and we therefore modify the order and judgment accordingly.
Defendant's eleventh affirmative defense/eighth counterclaim likewise seeks to hold plaintiffs responsible for IET's failure to collect rent from 65 LB, but does not seek an offset based on rent actually collected from 65 LB. For the reasons stated above, we therefore conclude that the court erred in granting defendant's motion and denying plaintiffs' motion with respect to that affirmative defense/counterclaim, and thus we further modify the order and judgment accordingly.
Defendant's twelfth affirmative defense/ninth counterclaim similarly alleges damages caused by IET's failure to collect rent from 65 LB, although on the basis of IET's purported breach of the covenant of good faith and fair dealing. We agree with plaintiffs that "[a] cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of the contract' " (Deer Park Enters., LLC v Ail Sys., Inc., 57 AD3d 711, 712 [2d Dept 2008]; see also Utility Servs. Contr., Inc. v Monroe County Water Auth., 90 AD3d 1661, 1662 [4th Dept 2011], lv denied 19 NY3d 803 [2012]). The court therefore erred in granting defendant's motion and denying plaintiffs' motion with respect to that affirmative defense/counterclaim, and we further modify the order and judgment accordingly.
Entered: July 31, 2019
Mark W. Bennett
Clerk of the Court